The next matter, number 24-1412, Rashid Akinsanya v. Merrick B. Garland. At this time, would counsel for the petitioner please introduce himself on the record to begin? He has a nine-minute argument. Ben Osorio and Ms. Elena Taylor for the petitioner, Rashid Akinsanya. Your Honors, may it please the Court, and if I may, I'd like to reserve two minutes for rebuttal. You may have two minutes. Thank you, Your Honors. This Court has instructed the agency in three different cases over the last three years that the acquiescence portion of protection under the Convention Against Torture Analysis requires both a look at the awareness prong, but also a breach of the duty to intervene. Because that did not occur by either the IJ in this case or the BIA, we're asking the Court to remand. I think it's pretty clear from both the immigration judge's decision and the BIA. I'm sorry, counsel. Will you also be arguing likelihood of torture on the CAD claim, or is that the ACLU lawyer who's going to argue that? Your Honor, graciously, the ACLU has allowed me to kind of – there's no division of labor here, so I'm open to take any questions. Okay. I just wanted to know if it was going to be covered. Yes, Your Honor. And if Your Honor would like me to go there quickly, I would say I read both the immigration judge's decision and the BIA's decision to conflate – I guess not really conflate it. I think they're saying Mr. Akinsanya fails on the acquiescence portion, so we never need to reach the predictive likelihood of torture. It's almost like if we were looking at an asylum case and you say, well, your case fails on nexus, so we never need to reach the government-enabled unwillingness. Because every time the IJ references the standard, he says, you know, I find that it's not more likely than not that you'll be tortured with the acquiescence of a public official. So I don't see either from the IJ's sort of findings of fact before he gets to his legal analysis, and I definitely don't see it in the BIA's decision because they're not even entitled to make those findings of fact in the first instance that there has been a predictive finding of torture. So I think, one, the legal standard on the acquiescence has not been done in accordance with this court's jurisprudence, so that merits remand. And also, given that's going to be remanded to avoid further litigation, I would ask that the fact finder make, in the first instance, those predictive likelihood of torture findings. So is the best point, in contrary to what you just said, where the IJ says, the individual has not experienced past harm or torture in Nigeria, but the experiences, the court considers, however, the experiences of the respondent's family members with bandits or gunmen in Nigeria. So, sort of, it hasn't happened to him, but I consider this other stuff, and what happened to those people was really bad, and then there isn't the next sentence. Is that the problem? It says it's torture. He's likely to be tortured because of what happened to the sister and the ex-wife? I see the IJ, Your Honor, respectfully, as conceding that there is a risk of harm to him. I see the IJ specifically stating, you know, he may be harmed, and the expert, again, supports that. And, you know, his sister's been shot, his house has been broken into, his wife and kids have been, you know, beaten, all these other things. Right, so is that enough to say that the IJ has made a finding that there's likely to be torture of this person? I don't think that there has been a finding, Your Honor, made, at least my reading of decisions, and I've been wrong before. It seems to me that the IJ does list the evidence that it considered in reaching its decision. Does that count as the IJ explaining the reasons behind its factual findings? And sort of related to that, why should we remand for further explanation of why the IJ made the conclusion? Sorry, actually, I take that back. In terms of the IJ lists through the things it considered. Yes, Your Honor. So what is it missing? We know the factors he considered. I guess, again, I read it to say, I'm considering all these factors, and I'm finding that he fails on the acquiescence portion. So I never need to reach the torture. And I guess I'm asking, is it also fair to say, yeah, he's probably going to have really terrible things done to him that would qualify as the harm part of torture, but then it's no acquiescence, so you lose. My guess is that paragraph where he's talking about the family, the sister, and the ex-wife, and the expert, is that enough to, because one of the arguments you make is that there was no finding made of torture as far as harm. But it sounds like, to me at least, that he was trying to say, kind of incompletely maybe, that he is going to be harmed. Well, I think since we are discussing this, Your Honor, I think that shows that it's unclear. And I think we need clear findings from the immigration judge, both to have something for the board to adequately review, but also for this court to review. So, again, I don't see that as having made a finding of predictive torture. I think he's conceding. I see all these risks to you. I see all these things that have happened to your family members. I see what's happened to your colleagues in the police, where 13 of them have been murdered over the last 10 years. But then he's saying, okay, well, I see there's risk to you. But then I'm saying, well, it doesn't matter because you can't show acquiescence. And this is, again, one of the problems we have with it, is that the high-level Nigerian government is taking actions against this. And I think that conflicts directly with the regulation that says a public official. So that's really the guts of the argument, right, right there. So let me ask this. So the IJ says the right legal standard, right? He does articulate the HH standard of breach of likely duty, right? He at least says that much. I concede that, yes, Your Honor. Okay. And then he says a lot of facts that, unlike, I think the case was Khalil, which was where the IJ only focused on sort of macro kind of countrywide. This IJ actually talks about countrywide situation, but also individualized things that happened pertaining to the investigation of the sister, the investigation of the ex-wife. Is that enough to say, because he looked at both what I would call macro and micro factors, that that's sufficient to understand us to at least conclude the IJ thought that the HH second-prong acquiescence was met? Well, I would say no, Your Honor. And I guess quickly, as I see my time is running out, I just want to make sure that I do address the breach of duty, because I think that goes to that, Your Honor. I understand he's saying that, but given that this court hasn't really expounded on what that means to breach their duty, I would argue, one, the sister had to pay every time that she went. Well, HH says it's a duty to intervene, right? Yes, Your Honor. It's a duty to intervene. So that means to me, try to help these people. Like the government should try to help this person. I agree, Your Honor, but again, we have to take like these particular aspects. What would an accurate analysis of this case look like under First Circuit precedent? So what should the IJ have done? I would say, we would first say, is the Nigerian government aware that Boko Haram is conducting these activities? That's clear from the record that's happening. So we would check that box. The second box, I would say, is there a duty to intervene, and has that occurred? I would say, this is a police officer who they know that police officer in his specific unit, there have been 13 of them, eight that were killed, you know, about 2013, and then five killed over the next couple of years under suspicious circumstances. His sister was shot. Every time she went to the police to check on the status of that investigation, the Nigerian government made her pay. Then his wife and kids were attacked. They fled the country. Clearly, they fled the country because they didn't think that they could seek adequate protection, Your Honor. So I would say that we've satisfied that they've breached their duty to intervene, Your Honor, and I'll respectfully reserve the rest of my time. Can I, before you shut down?  So we've talked all about the IJ. It seems like the BIA, so let's assume for the purpose of my question, the IJ got it right. Just assume that for right now. The BIA seems like didn't apply the right standard in doing the de novo review of the acquiescence claim. I didn't see them talking about a duty to intervene. Is that, no matter what I think of what the IJ did, a basis for remand because the BIA just didn't give your client the appellate review he was entitled to? I mean, I think, yes, they would have to remand because that's the wrong legal standard, but I would say quickly, Your Honor, I think the BIA was specifically doing that to buttress the IJ's statements that the Nigerian government as a whole was taking steps because I think that is in conflict with this circuit's precedent. Because what the BIA says is simply that the government may be ineffective is not enough.  But I think they also, if you look, they almost quote the IJ where they say, you know, the Nigerian government may lack the ability to protect him. And I think that they are, that's why they're signing Fifth Circuit law to try to protect the IJ on that blanket statement. And that's page four. And your position is that statement is not the First Circuit law. I think that's in direct conflict with CALEO, Your Honor. And, well, so I guess my question again is the BIA didn't articulate, I'm just trying to understand your argument, the BIA didn't articulate the right legal standard. It didn't articulate H.H. CALEO, Judge Monte Carlo's case that I now forget. It didn't say, right, that. And so whatever analysis it made would have not been fair to your client because he was entitled to de novo review under a correct legal standard and he got some kind of review under an incorrect legal standard. Is that your position or do I not understand? That's correct, Your Honor. And also under Maria Morocho, Your Honor. Yes. That's the name of it. Thank you.  Thank you, Counsel. At this time, would Counsel for the amicus party please introduce himself on the record to begin? He has a six-minute argument. Good morning, Your Honors. May it please the Court. Seng Yip Kim for amicus. And thank you for allowing amicus to appear in this case. Our biggest concern is the BIA's choice of law. So the choice of law is important, not just at the circuit court level, but it's more important at the agency level. And that's why the BIA created Medgar Garcia, followed by Medgar of MNI, just to create this prediction and consistency of the choice of law. And somehow, for unknown reasons, the BIA relied on out-of-circuit law in this case. The respondent says the out-of-circuit law is just persuasive authority rather than binding. Why are they? I'm assuming you think they're wrong.  So let me start with this. The BIA hasn't really opined on can the agency cite persuasive out-of-circuit case law, because that really was not the issue in Medgar Garcia or Medgar of MNI. But putting the issue aside, as a matter of logic, it might make sense if the legal question is not clear within the circuit. So, for example, if there's a legal question that is not clear within the First Circuit, and if the BIA and UIJ rely on out-of-circuit court case law as persuasive authority, it might make sense. But that's really not the case here. As your Honor has mentioned, there's HH, there's Calville, there's Murillo-Mocho. It may not be perfect, but it's good enough to provide very good and clear guidance as to what the BIA should have done. But that's not what the BIA's decision reasoning appears to be. And at best, it's really unclear as to what the BIA did. It's not only about the reliance of the out-of-circuit case law. That actually causes more problem. But it's really unclear as to what the BIA did. I appreciate the citations, but it really matters what the law is, right? So I'm looking at the BIA's decision. And it says, the government's mere inability to intervene to prevent torture does not amount to acquiescence. Mere inability to intervene. Do you agree? Am I not understanding that that standard is different than the First Circuit standard, which is there's a duty to intervene that has to be more than minimal efforts, I think we say? And so that minimal efforts idea is not captured here. That seems to me to be the problem. Correct, Your Honor. So for the sake of fairness to the agency, if there's true inability to protect, even despite all efforts, then it may not breach the legal duty. But it's not clear as to what the BIA really did. Putting aside the citations, out-of-circuit citations BIA relied on, it's really unclear as to what the BIA really meant to say. Does that mean that inability to protect is the national government's inability to protect enough to foreclose acquiescence? Does that mean that even minimum efforts is enough to foreclose acquiescence? Or BIA truly was saying that with all efforts, if that still cannot save a person from torture by a private actor, that forecloses acquiescence, it's really not clear as to what the BIA really said. So I think this case is very similar to Khalil and Murillo-Murillo in terms of the scope of the relief that this court could provide. It's unclear as to what the agency did. And if it's unclear, then this court cannot provide meaningful judicial review. So the proper remedy is a vacature and send the case back to the BIA and remind the BIA of Medoff-Garcia and re-address the CADEC acquiescence issue as well as other elements of the CADEC issues. What's your argument, if any, on the following? Boko Haram has so infiltrated the government that because there are members in the government, there is a likelihood that there would be actual acquiescence. Yes, Your Honor. So one highlight of this case is the point that Your Honor just mentioned, Judge Howard. Why that's important is there could be some cases where there is just generic corruption and there is no high degree of infiltration by private actors into the government. In those cases, arguably, the court could see that as if the national government is doing a lot of effort, meaningful efforts, may or may not be perfect, meaningful efforts suppress those insiders, sympathizers, then that could lead to the question of the probability of the chance that the person who suffered torture by private actor had the acquiescence of those corrupt officers. But that's really not the case here. So there's a disconnect within the agency's finding and the reasoning and conclusion. So agency doesn't really dispute about the expert testimony, so it's undisputed. An expert says there's high degree of infiltration. The sympathizer is not only at the lower ranking, high level. Even the president of Nigerian government mentioned about how that degree of infiltration has been a significant problem. So if the Nigerian government, the national government, has no ability to eliminate those sympathizers, then the logical conclusion is then the probability of petitioner being harmed by that vocal harm at the acquiescence of those corrupt officers should increase. So has that point been, was that point made before the BIA, and did the BIA address that point? So the first question, whether that argument was made before the BIA, it's actually unclear as to what the petitioner clearly argued in the brief. I think in the opening brief, the way that my brother argued, we see that as it covers that argument, and the government doesn't raise the exhaustion issue. So we don't think that there is 1252 D1, that's the true exhaustion issue here. So we think that court could entertain that claim. And the BIA did not address that. I'm sorry, BIA did not address that claim, Judge Howard. Unless the court has any further questions, we ask the court to grant the petition. Thank you. Thank you, counsel. At this time, if counsel for the respondent would introduce herself on the record to begin. She has a 15-minute argument. Good morning, Your Honors. Lisa S. Marcia for the respondent of the Office of Immigration and Litigation for the respondent. Excuse me. Your Honors, what this case really boils down to is whether the agency's findings denying the petitioner's application, I mean, for a deferral under the Convention Against Torture, is within the bounds of First Circuit precedent regarding the acquiescence standard. The position of the government is that looking at the agency's decisions, it's all within the bounds of First Circuit precedent. First, the agency never disputes that First Circuit precedent should be applied to this case. Secondly, the immigration judge's decision, as concurred by the board, correctly cites the appropriate First Circuit legal standards, including the two-prong acquiescence standard articulated under First Circuit precedent. And third, the agency's determination is not inconsistent with First Circuit law, that even if the evidence shows that the Nigerian government and public officials may possibly be ineffective or even unable to protect the petitioner, the petitioner will still fail to establish through sufficient evidence that the Nigerian government or public officials would acquiesce in his torture. Looking at the merits of this case with the immigration judge's findings, the immigration judge clearly looked at this case through First Circuit law and addressed legal duty prong. You point out that the IJ stated the correct two-prong acquiescence test, but is just the citation enough? Taken to the extreme, your position would be stating that, would be that stating the correct rule and then stating a conclusion is enough and would be enough for us to sufficiently determine whether the agency applied the correct legal standard. The immigration judge did much more than just state a conclusion here. He went through the evidence. He went through the analysis that would be required under that standard. As we argue in our brief, perhaps he doesn't say, like, awareness equals this and legal duty equals this, but he does state, he says, like, you know, the Nigerian government has awareness of the Boko Harams. And then he goes through and says, in this particular case, the police responded when the petitioner's family had difficulties. The evidence, the country conditions evidence shows that the Nigerian government is actively fighting the Boko Haram. So he makes all of the findings that are needed, and then he concludes acquiescence was not shown here. That is sufficient under this court's law. As we argue in our brief, the agency's decisions, their reasoning is clearly discernible here on how the findings fit into the legal standard stated. So as such, the agency here complied with the First Circuit President. Well, what did the IJ understand the duty to be? I mean, I can't really discern that from the IJ's decision. Well, the immigration judge's findings go through what was complied with here, that the police investigated when the petitioner's family was threatened. But he says, there's a duty, that's one of the things I have to find, was this duty breached. So which implies there's a duty, and I have to decide whether it's breached. And then I tell you a whole bunch of facts, and then I say no acquiescence. How do I understand what he thought the duty was, whether this was more than minimal efforts? Like, none of that is explained. So it's just, here's a quote from the First Circuit case at the highest level of generality, a bunch of facts, conclusion, and you're saying, well, fill in all the rest. But should we really be doing that? Well, Your Honor, as you just stated to the petitioner and petitioner said, that was sufficient. I mean, there's evidence of the government helping here. Now, whether or not that's minimal or not, this court and Maria Maraccio and Khalil both said that it was petitioner, that given that it's petitioner's burden of proof under the Convention Against Torture to show that they have sustained their burden of proof, that it may well be their responsibility to show that minimal efforts might not be enough. But this isn't the question of what they showed. They showed what they showed. The question is, did the judge understand what he was looking for? And where he doesn't tell us anything more than sort of the top line, how can we understand, well, when he tells us all these facts, he was thinking about the right thing. Isn't that what's important? Well, Your Honor, I don't think this court has ever said, like, you know, what that threshold is of what is minimal or what is maximum in terms of, like, what would be considered. But he makes no characterization other than saying, at the end, it's enough. Well, this case, well, every immigration case— I mean, tying it to this case, like, that does seem to be what's missing here is a weighing of that question and an answer to it. Well, Your Honors, as I was about to respond to Judge Aframe, essentially we have always looked at immigration cases on a case-by-case basis and allowed the weighing of the evidence to sort of guide our understanding of how it is applied in each case. So in this case, the immigration judge went through the evidence presented and said the police—excuse me—the police responding in this manner was sufficient. The government responding in this manner was sufficient. And therefore, with the petitioner making no contention regarding what is minimal or maximal here, that was considered sufficient. And with the board and looking at the board's decision, responding to the petitioner's arguments on appeal, the board also finds that sufficient. And the board also states that under the legal standard of acquiescence, that what was found by the immigration judge was sufficient. So I guess I think the first question, like, did the IJ do enough to me, at least, is sort of a close question. The BIA standard seems to be something not totally different, when it just says a government's inability to protect does not amount to acquiescence. That statement is not true under First Circuit law. Sometimes it may be, sometimes it might not be. It depends whether the government made more than minimal efforts. Because if you make minimal efforts, you won't be able to protect your citizens. So where can I understand the BIA to have provided this individual with the de novo review he was entitled to under acquiescence if they make a statement there, which is one of their two statements of the law, that seemed to me to be wrong under First Circuit precedent? Well, Your Honors, I think that actually there's two questions that are being answered there. The complete language regarding acquiescence is awareness of such activity, and then thereafter breaches or her responsibility to intervene to prevent such activity. So the question that you're asking first, which is the minimal, maximal efforts of this person, more goes towards what is that legal duty to intervene, which wasn't actually questioned here in some way. But then the second part, what is that legal responsibility to intervene to prevent such activity? And that, in total, that is what the question that the board is answering, that ineffectiveness or inability does not fulfill the acquiescence standard. Sometimes. Right? Sometimes. Because sometimes you can't help because you're not trying hard enough. And so don't we have to think about, is the Nigerian government at a macro level and a micro level trying hard enough to fight Boko Haram, fighting infiltration, on the ground, officers addressing these things? And if they're trying hard enough and they still fail, it strikes me that, well, that's it. But there has to be some analysis. It strikes me as, are they trying hard enough? And that's what seems to be missing from the BIA's analysis as it reviews the IJ. There's no suggestion they understand that's part of the thinking. Are they trying hard enough? Well, this court in many different cases has said that police activity, for example, in a recent case before this court, the Fortune v. Garland said, the police, though imperfect and struggling with ineffectiveness, were nonetheless acting against those attempting to harm the person's family in that particular case. Right. That's a case-by-case determination. That can be so if they're trying hard enough. And maybe they are, maybe they're not. But the problem is, even if the IJ got it right, which I'm assuming for this line of questioning, the BIA seems to be not considering the possibility that the reason the government is ineffective is because they're not trying hard enough. And that seems to be part of the analysis when we say, has the government followed its duty to intervene, which I would put in plain language, are they trying hard enough? Well, in this particular case, the immigration judge is finding that they are trying hard enough. Okay, and I accept that for the purposes of discussion, whether I just accept that. My question is, if the BIA on de novo review doesn't understand that that's part of the thing it needs to be thinking about, is that a basis for remand? Well, the question is, was that question presented to the board? Again, referring back to this court's case law in which it has remanded for the question of legal duty to intervene, in Khalil and in Maria Morojo. I'm sorry, just refer back to it. In Maria Morojo, this court suggested, we are mindful that it is ultimately Maria Morojo's burden to demonstrate acquiescence that may well have been his task to show that the Ecuadorian government had a responsibility to do more. And there was evidence, right? Before the BIA, before the IJ, who showed some level of infiltration and corruption of Boko Haram into the government, correct? And the immigration judge read that here and found it wasn't sufficient. Right, and did the BIA consider, can I understand from this BIA opinion, that they considered whether the government had done enough, had tried hard enough? How do I know that that's what the BIA was thinking about, even if the IJ was? The board ultimately concurred with the immigration judge's decision here. In sum, we concur with the immigration judge's determination. The respondent has not presented the requisite particularized evidence. There's more particularized evidence, which is what the immigration judge went through here, that it's more likely than not he would be tortured upon return. Right, and so what I find challenging is if they just said that and they just stopped and that was all we had, but they seem to cite Fifth Circuit cases that say something else or some portion of what we require, but not everything that we require, and so isn't that a problem? Because if you're entitled to a review, and the BIA, if they understood what they were supposed to be thinking about, might have disagreed with the IJ. That's the whole point of the appeal, right? And the board didn't disagree with the immigration judge here. The board specifically said we don't find any legal or factual error in the immigration judge's determination. And the fact that they used Fifth Circuit law illustrative of something that this court has also held, that ineffectiveness or inability is not sufficient, is simply citing persuasive case law of another circuit. Looking at the brief of the petitioner in this case to the board, the petitioner there cited circuit law from all over the place as well. He cited Ninth Circuit cases, Tenth Circuit cases. The Fifth Circuit citing a persuasive case here doesn't necessarily mean that it was outside the bounds of the First Circuit. I'm not that moved by what the citations say. I guess I'm more moved by the fact that what's not said is the thing that we require the BIA to think about, which is more that there were enough efforts made. And that's the part that's never addressed, never evaluated by the BIA. So, sure, they find some cases, but those cases don't get to what our cases say, strikes me as the key thing. And so it's not, to me, it's a problem to say, sure, I agree with the IJ, but I've thought about something that doesn't have all the factors in it. So what does it mean to say I agree with the IJ? I mean, it doesn't mean anything, right? If I'm not thinking about the right things, if I'm the BIA. Well, looking at the reasons that this court has remanded in the cases of Kalilo and Maria Morojo, what they were remanding on was the idea that the immigration judge didn't make enough factual findings and engagement with the evidence regarding the idea that there might be, I think specifically the court mentions, it's skepticism regarding the higher and lower officials. And that's something that happened in our case. In the case before this court, the immigration judge engaged with the evidence of the higher versus local officials. And the second question that I engaged in was that they didn't necessarily look at whether or not the government steps would have been inadequate or ineffectual. But that was addressed here as well. I'm sorry, it took me a second to find that section. So those are the two things on which the court said, this has to go back to the agency to look further at. But that's not what happened here because the immigration judge looked at that. The immigration judge looked at, I'm sorry, I'm out of time. Please continue. The immigration judge looked at the local versus higher officials. That didn't happen, Maria Morojo or Kalilo. The immigration judge and the board looked at the question about whether or not the government steps would have been inadequate or ineffectual. The immigration judge and the board looked at that here. That is the reason that the agency's decision is sufficient here. Okay, your time is up. Thank you very much. Thank you, counsel. At this time, the counsel for the respondent, I'm sorry, for the petitioner, please reintroduce himself on the record to begin his two-minute rebuttal. Thank you, your honors. Ben Osorio and Ms. Elena Taylor for the petitioner. I want to quickly try to satisfy Judge Afram's concern or maybe try to push him over the line on whether the IJ applied the correct standard or not. And I'm pointing to the last sort of full analysis paragraph in the record, I believe it's page 51. The IJ states, although these efforts may not be entirely effective, and while the Nigerian government certainly faces an uphill battle against Boko Haram, the evidence does not support a finding of government acquiescence in this case. A general ineffectiveness on the government's part to prevent widespread violence and crime affecting the population at large does not suffice to show acquiescence such that protection under the cat is warranted. And then he cites two first-circuit cases. So one, I would say at the time that he cited these cases, HH, Maria Morojo, and Kalilo did not exist. And I would agree with that last statement that general crime may be a true statement still, but that's not what we have here. We have specific, targeted, particularized evidence that is going after him. So I would say that is why I think the BIA then tried to cite the Fifth Circuit decision that would support the IJ's legal analysis at the very end of his cat decision. And then my only other second point here in rebuttal is I just want to address Judge Howard's question that I think is critical to this. The IJ and either the board, the IJ seems to know all these facts that the expert is saying. Yes, there's corruption. Yes, the president himself is acknowledging that the executive branch, all branches of government have been infiltrated. Yes, the vice president was a sympathizer and participated in the kidnapping of the tribal girls. But there's no explanation in the evidence by either the immigration judge or in the decisions by either the immigration judge or the BIA on why these country conditions, documentary evidence, why this expert who's been deemed qualified by the credible testimony of the petitioner himself, who notes that there's corruption, you know, cites corrupt officials within the police, within the government. And so I think when you have all of that credited evidence, that seems to me, and I think this was hopefully Judge Howard's point, that that satisfies the acquiescence portion. It is almost like a per se since we have that in the record. They've been so infiltrated that it is deemed acquiescence. Thank you, Your Honor. Thank you. Thank you, counsel. That concludes argument in this case.